UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:20-CV-106-TBR

**JIMMIE BRISTOE**                                                                                     **PLAINTIFF**

**v.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, *et al.***                                                     **DEFENDANTS**

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Jimmie Bristoe's Motion to Remand. [DN 8]. Defendants responded [DN 13], and Plaintiff replied [DN 14]. Accordingly, the motion is ripe for adjudication. For the reasons stated below, the motion is DENIED.

### I.     Background

Plaintiff Jimmie Bristoe originally brought this action in the McCracken County, Kentucky Circuit Court. [*See* DN 1-1]. Defendants removed the action to this federal district court, asserting diversity jurisdiction under 28 U.S.C. § 1332. [DN 1 at 3]. The Plaintiff has moved to remand the action to state court on the grounds that this Court lacks subject matter jurisdiction because diversity of citizenship does not exist between the parties. [DN 8]. Defendants admit that one of the named defendants, Agent Waldon-Denton, is a Kentucky citizen, as is Plaintiff. [DN 1 at 2]. However, Defendants claim that the Kentucky defendant's citizenship "should be ignored for purposes of determining diversity jurisdiction" because she was fraudulently joined to the action to defeat this Court's jurisdiction. *Id.* at 2.

### II.     Standards

The burden to establish federal subject matter jurisdiction lies with the party seeking removal. *Vill. Of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008) (citing

1

*Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453-54 (6th Cir. 1996)). Generally, a defendant may remove a civil case to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. § 1441, 1446. Because Plaintiff's complaint does not raise a federal question, the exclusive basis for federal subject matter jurisdiction is 28 U.S.C. § 1332, which requires the citizenship of each plaintiff to be diverse from the citizenship of each defendant. See *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68, (1996) (explaining the principle of complete diversity).

Defendants bear the burden of proving fraudulent joinder. "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Chambers v. HSBC Bank USA*, *N.A.*, 796 F.3d 560, 564-65 (6th Cir. 2015) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). "If there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [the district] Court must remand the action to state court." *Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010) (citing Coyne, 183 F.3d at 493). In other words, if Plaintiff's claims have even "a 'glimmer of hope,' there is no fraudulent joinder." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999)). This is a "heavy burden," *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999), as Defendants must demonstrate that there is no genuine basis upon which Plaintiff may be able to recover against Agent Waldon-Denton. *Coyne*, 183 F.3d at 493.

The standard for a defendant to successfully show fraudulent joinder is even higher than the standard a defendant must meet to succeed on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Anderson v. Merck & Co. Inc.*, 417 F. Supp. 2d 842, 845

(E.D. Ky. 2006) (citing *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002)). "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6) . . . [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendant, has no basis in law or reason." *Little*, 227 F. Supp. 2d at 846-47; See also *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).

In matters concerning comity and federalism, any ambiguity must be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (explaining that "the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction" and that ambiguities regarding the scope of removal "should be resolved in favor of remand to the state courts"). Furthermore, any ambiguities in the relevant state law must be resolved in the light most favorable to the plaintiff. *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (citing *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)); See also *Coyne*, 183 F.3d at 493 ("All doubts as to the propriety of removal are resolved in favor of remand.").

## III.   Discussion

Plaintiff wants the action to go back to state court. Defendants want the action to stay in federal court. Because Defendants removed the action, they have the burden of proving that the action should stay here. To successfully carry that burden, Defendants must prove there is no genuine basis upon which Bristoe may be able to recover against Agent Waldon-Denton.

### a.   Facts

The following facts are set out in Bristoe's Complaint [DN 1-1] and Motion to Remand [DN 8]. Defendants accept the allegations as true for the purposes of the motion. [DN 13 at 2]. On

June 15, 2018, Bristoe was involved in a car accident while driving a 2000 Chevy Silverado insured by State Farm. The driver of the other vehicle was uninsured. In addition to the Chevy Silverado, Bristoe also had two other vehicles at the time, both of which were also insured by State Farm. None of Bristoe's policies included coverage for uninsured motorists ("UM Coverage"). Bristoe claims that as an older man with "a limited educational background," he "did not have knowledge as to coverage issues concerning his insurance policies" and did not know "the meaning of uninsured and underinsured." In rejecting UM Coverage, Bristoe claims that he "relied on the advice, expertise, and guidance of [Agent Waldon-Denton]," and that "throughout the years that he was insured through State Farm, [he] did not know the meaning of uninsured and he was never explained the meaning of uninsured." Bristoe says that he relied on the advice of Agent Waldon-Denton, and her predecessor in the business, her father, for his insurance needs for about thirty years. In short, Bristoe claims Agent Waldon-Denton failed to properly inform and advise Bristoe about UM coverage, and in doing so, breached a common law duty of care and violated the Kentucky Consumer Protection Act ("KCPA").

### b.   Kentucky Consumer Protection Act Claim

The KCPA prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." K.R.S. § 367.170(1). To maintain an action alleging a violation of the KCPA, an individual must fit within the protected class of persons, which includes "any person who purchases or leases goods or services primarily for personal, family or household purposes." K.R.S. § 367.220; *see also Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.*, 836 S.W.2d 907 (Ky. Ct. App. 1992). Therefore, generally, there must be privity of contract between the parties in a suit where a violation of the KCPA is alleged. *See id.* at 909 ("The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the

4

[Kentucky] Consumer Protection Act."); *Tallon v. Lloyd & McDaniel*, 497 F.Supp.2d 847, 854-55 (W.D. Ky. 2007) (holding a plaintiff lacked standing under KCPA where defendant was "several steps removed from privity of contract with the [plaintiff]"); *Brewer v. Portfolio Recovery Assocs.*, No. 1:07-cv-113-M, 2007 WL 3025077 (Oct. 15, 2007) (granting motion to dismiss on KCPA claims where plaintiff failed to allege a qualifying purchase or privity of contract with defendant).

Count II of Bristoe's Complaint alleges that Agent Waldon-Denton violated the KCPA by using the "unfair," "confusing," "deceptive," and "misleading" policy and practice of "having each vehicle issued under a separate policy." [DN 1-1 at 16-18]. Bristoe alleges this practice led him "to believe that he had insurance coverage that would cover him for all events, including, but not limited to, accidents involving uninsured motorist[s]." *Id.* at 17. Bristoe agrees that his insurance policies existed pursuant to a contract issued by Defendant State Farm. [DN 14 at 7-8]. Bristoe states, "[a]dmittedly, based upon privity of contract, Defendant, State Farm, not [Agent Waldon-Denton], was a party to the contract with . . . Bristoe." *Id.* at 8. However, Bristoe argues that a claim may still lie against Agent Waldon-Denton under the KCPA because the Kentucky Court of Appeals "appear[ed] to extend the [KCPA] to an agent" in *Morton v. Bank of the Bluegrass and Trust Co.*, 18 S.W.3d 353 (Ky. Ct. App. 1999).

Defendants argue, "Kentucky law is clear that an insurance agent cannot be liable under the KCPA because there is no privity of contract between the agent and the policyholder." [DN 13 at 10]. Further, "[b]ecause insurance agents are not parties to the insurance contract, Kentucky courts have also held that insurance agents cannot be held liable for a KCPA claim as a matter of law." *Id.* Defendants cite two of this Court's recent opinions[1] to support their argument that Bristoe has no colorable claim against Agent Waldon-Denton under the KCPA.

---

[1] *Wright v. State Farm Mut. Auto. Ins. Co.*, 443 F.Supp.3d 789 (W.D. Ky. 2020); *Helton v. American General Life Ins.*, 946 F.Supp.2d 695 (W.D. Ky. 2013).

Indeed, this Court recently faced a motion to remand in a case nearly identical to this one in *Wright v. State Farm Mut. Auto. Ins. Co.*, 443 F.Supp.3d 789 (W.D. Ky. 2020). The plaintiff in *Wright* also argued that *Morton* extended liability under the KCPA to insurance agents. 443 F.Supp.3d at 795-96. However, because *Morton* was "primarily concerned with whether an insurance policy is a service within the meaning of the KCPA," the Court found that *Morton* did not extend KCPA liability to insurance agents, as it did not address privity of contract *Id.* Collecting Kentucky federal and state court cases on the issue, this Court determined the plaintiff could not state a colorable claim against the State Farm insurance agent under the KCPA. *Id.* The same is true of Bristoe's KCPA claim against Agent Waldon-Denton here. As the Court stated in *Wright*, "a party to the contract cannot enforce the KCPA against a third-party." *Id.* at 795. Because lack of privity precludes Bristoe from stating a colorable KCPA claim against Agent-Waldon Denton, the Court need not address Defendant's statute of limitations argument.

### c.  Breach of Duty Claim

#### i.  No Duty Created by Course of Dealing

An insurance agent's duty to her clients is a question of law. *Hardy Oil Co., v. Nationwide Agribusiness Ins. Co.*, 587 Fed. Appx. 238, 240 (6th Cir. 2014). Pursuant to Kentucky law, an insurance agent has "no affirmative duty to advise . . . by the mere creation of an agency relationship." *Id.* Rather, an insurance agent merely owes her clients a standard duty of reasonable care. *Associated Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 63 (Ky. 2010); *Helton v. Am. Gen. Life Ins. Co.*, 946 F.Supp.2d 695, 708 (W.D. Ky. 2013). "An insurer may assume a duty to advise an insured when: (1) he expressly undertakes to advise the insured; or (2) he impliedly undertakes to advise the insured." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992). "An implied assumption of duty may be present when: (1) the insured pays the insurance agent

consideration beyond a mere payment of premium . . . (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on . . . or (3) the insured clearly makes a request for advice." *Id.* (citations omitted). The parties appear to agree that Agent Waldon-Denton never expressly undertook to advise Bristoe. Therefore, the question is whether Agent Waldon-Denton had an implied duty to advise Bristoe.

Bristoe does not claim that an implied duty to advise arose from either paying Agent Waldon-Denton extra consideration or from expressly requesting her advice. Instead, Bristoe claims that an implied duty to advise arose from the course of dealing between the parties. Bristoe states in his reply that "the longstanding relationship, developed over many years with [Agent Waldon-Denton], results in establishing a duty to him to counsel and advise him regarding insurance coverage matters." [DN 14 at 2]. Bristoe further states, [Agent-Waldon Denton] breached her duty to him by failing to notify and discuss with him the importance of having uninsured motorist coverages on his automobiles." *Id.* Therefore, Bristoe argues that an implied duty to advise arose from the course of dealing between himself and Agent Waldon-Denton. *Id.* at 6 ("Given the long term relationship with [Agent Denton-Waldon], and [her] office, an objectively reasonable insurance agent would be on notice that Bristoe relied upon the agent for advice regarding coverage.).

Defendants cite to several Kentucky Court of Appeals cases to argue that there was no course of dealing that would put an objectively reasonable insurance agent on notice that their advice is being sought and relied on. [DN 13 at 14-16]. Defendants first cite *Watson v. Elswick*, No. 2014-CA-000030-MR, 2015 WL 5896995 (Ky. Ct. App. Oct. 9, 2015). In *Watson*, the Kentucky Court of Appeals found no implied duty to advise even where the insureds, the Watsons,

had a twenty-six-year affiliation with the insurance agent. 2015 WL 5896995 at *3. The court stated:

> In this case, there was no evidence that the Watsons paid Elswick any consideration beyond the policy premiums. Their twenty-six year course of dealing with Elswick was lengthy, but there was no evidence that they sought out and relied on his advice beyond the general request for "full coverage," which . . . was inadequate to trigger a duty to advise. Indeed, the deposition testimony indicates that the Watsons never spoke with Elswick about any specific aspects of their insurance coverage beyond such generalities as "full coverage."

*Id.* Defendants also cite *Wood v. State Farm Fire and Cas. Co.*, No. 2019-CA-000462-MR, 2020 WL 1898401 (Ky. Ct. App. Apr. 17, 2020). In *Wood*, the Kentucky Court of Appeals again found the insurance agent had no implied duty to advise even though the insureds, the Woods, had a fifteen-year-affiliation with the agent. 2020 WL 1898401 at *5. The court stated:

> The Woods allege, under the second prong, that they had an extended course of dealing with Miller over fifteen years. They assert Miller sold them their annual policy, and that he advised them regarding their insurance policy and held himself out as an advisor. However, the Woods did not set forth any allegation in their complaint, aside from being customers of Miller's for fifteen years, that would have put him on notice that they would expect him to provide them any advice or notice, not required by their policy, if State Farm ever opted not to renew their policy.

*Id.* Next, Defendants cite to *Settle v. Kentucky Farm Bur. Ins. Co.*, No. 2003-CA-000999-MR, 2004 WL 1093713 (Ky. Ct. App. May 14, 2004). In *Settle*, the Kentucky Court of Appeals found no implied duty to advise even though the insureds, the Settles, had a twenty-five-year affiliation with their insurance agent, Hendrix. 2004 WL 1093713 at *3-4. The court stated:

> [W]e cannot say that Farm Bureau had an implied affirmative duty to advise the Settles of the need for mine subsidence coverage beyond the notice sent in 1987 . . . Terry's request in 2000 to increase his home insurance and give him anything he needed did not put the onus on Farm Bureau to inform the Settles about every kind of coverage they might need, notwithstanding the fact that Farm Bureau was the Settles's sole insurer for twenty-five years. Despite Terry's assertion that he relied on Hendrix to see that he had whatever coverage he needed, we do not see that Farm Bureau was ever put on notice that they were responsible for determining the extent of the Settles's full insurance needs.

*Id.* at *4.

The facts as they relate to course of dealing in *Watson*, *Wood*, and *Settle* are each strikingly similar and materially indistinguishable from the case at bar. Bristoe claims to have worked with Agent Denton-Waldon's office for twenty-eight years. [DN 14 at 5]. Yet, Bristoe fails to assert anything beyond that long-term relationship that would put an objectively reasonable insurance agent on notice that their advice is being sought and relied on. Thus, Defendants have carried their burden of showing that there is no colorable basis for predicting that Bristoe may recover on his breach of duty claim against Agent Waldon-Denton due to the parties' course of dealing.

### ii. No Duty Created by Assumption of Responsibility

Bristoe states at several points in his complaint, his motion to remand, and his reply to Defendants' response to his motion to remand that he relied on the expertise of Agent Waldon-Denton. [DN 1-1 at 6, 9, 10, 13]; [DN 8 at 3, 4]; [DN 14 at 5]. In his motion to remand, Bristoe specifically states that "Plaintiff relied on . . . the fact that [Agent Waldon-Denton] represented herself to be an expert in insurance and financial matters and sent brochures to the Plaintiff indicating such." [DN 8 at 4]. Bristoe also submitted an exhibit which appears to be a boilerplate advertisement letter developed by State Farm. [DN 9]. The letter states, in relevant part:

> **[W]e're here to help life go right.** Protecting the things you value is important. So is making sure you have the right policy with the most discounts. But equally important are preparing for retirement, effectively managing your debt, making informed choices when purchasing big-ticket items and talking through all other financial decisions that affect your everyday life. We're here to listen. I'd love the opportunity to sit down with you and discuss your plans, dreams, and goals.

*Id.* (emphasis in original).

Defendants argue that there is no colorable basis for predicting Bristoe can establish an implied duty to advise Bristoe under the theory that Agent Waldon-Denton held herself out as an expert in insurance matters. Defendants cite to *Mullins* and state:

9

> A duty to advise may be present "if the company, or agent, represents directly or by advertising, that it will assume responsibility to advise the customer as to what is needed." When an agent holds itself out to the public as "a counselor and/or advisor, the scope of duty to advise is commensurate with the obligation assumed by the insurance company or agent selling the insurance."

[DN 13 at 16] (quoting *Mullins*, 839 S.W.2d at [2]49). However, Defendants argue that "sending a general letter to an insured offering to act as an advisor on financial issues in no manner created a duty on the part of Agent Waldon-Denton to advise Bristoe regarding optional coverages that he could purchase on his auto insurance policies" *Id.* at 17. Defendants further argue that "[a]n offer to advise without acceptance clearly does not create a duty to advise – and in fact, Bristoe's failure to respond suggests the exact opposite that Bristoe was not relying on Agent Waldon-Denton." *Id.* (citing *Hammond Transp., Inc. v. Cottingham & Butler Ins.*, No. 5:13-cv-274-KKC, 2016 WL 1255718 (E.D. Ky. March 29, 2016)).

Bristoe did not reply to Defendants' argument on this point. [DN 14]. However, the cases since *Mullins* have been clear that an implied duty to advise may arise only in one of the three circumstances the *Mullins* opinion explicitly identifies—payment of consideration beyond a premium, course of dealing, or an express request for advisement. *See e.g., Wood*, 2020 WL 1898401 at *5. Further, the apparent point of the *Mullins* language that Defendants cite to was to make clear that the court there would *not* recognize the creation of a duty to advise of optional coverages based on how a company represents itself or how an agent represents oneself, as that was a role better left to the legislature. *See id.*; *Mullins*, 839 S.W.2d at 249-50. Even if the point of the pertinent language in *Mullins* was to say that there may be a duty to advise if insurance companies or insurance agents state in marketing materials that they will assume the responsibility of advising customers about what optional coverage is needed, the exhibit Bristoe submitted [DN 9] does not demonstrate such an assumption of responsibility. In short, the letter does not show

10

that Agent Waldon-Denton assumed an affirmative duty to advise Bristoe. Therefore, Defendants have carried their burden of showing that Bristoe cannot prove Agent Waldon-Denton had a duty to advise. Again here, because the Court finds that Defendants have carried their burden of showing that Agent Waldon-Denton had no duty to advise under Kentucky common law, the Court need not address Defendants' alternative arguments regarding breach and the statute of limitations.

## IV.   Conclusion

There is no genuine basis upon which Plaintiff may be able to recover against Agent Waldon-Denton. Therefore, Bristoe's Motion to Remand is **DENIED**. All claims asserted against Defendant Susan Waldon-Denton in this action are **DISMISSED WITHOUT PREJUDICE**, and the Clerk is directed to terminate Defendant Susan Waldon-Denton from this action. **IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 12, 2021

cc: counsel

11